UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYLE T. JONES, JR. | : | |
| | : | |
| v. | : | Civil No.: 3:12CV601(EBB) |
| | : | |
| UNITED STATES OF AMERICA | : | |

RULING ON MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Pending before the Court is the motion of the petitioner, Lyle T. Jones, Jr. ("Jones"), for habeas corpus relief pursuant to 28 U.S.C. § 2255. Jones is presently serving three concurrent terms of life imprisonment following his 2003 convictions of racketeering (RICO), RICO conspiracy and drug conspiracy. In this motion, he asserts that his Sixth Amendment right to effective assistance of counsel on appeal was violated by counsel's failure to challenge the sufficiency of the government's trial evidence establishing the existence of the alleged RICO enterprise. In opposition, the government asserts that Jones's petition is untimely under the one-year statute of limitations for habeas petitions in that it was filed more than four years after his conviction became final; is substantively without merit; and is barred under the law of the case doctrine. Familiarity with the underlying facts is presumed.

For the following reasons, Jones's habeas motion [doc. # 1] is DENIED.

*BACKGROUND*

On April 24, 2003, a jury convicted Jones and others of conducting an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (RICO); conspiracy to conduct a RICO enterprise, in violation of 18 U.S.C. § 1962(d); and conspiracy to possess with intent to

distribute and distribution of 1000 grams or more of heroin and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (B)(1)(A).  On September 3, 2003, Jones was sentenced, under the then-mandatory sentencing guidelines, to three concurrent terms of life imprisonment.  October 20, 2008, his conviction was affirmed by the Second Circuit, but his case was remanded to the district court for consideration of whether he should be resentenced pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).  United States v. Jones, 296 F. App'x 179, 184 (2d Cir. 2008).  On remand, the district court issued a written decision on August 11, 2009 denying Jones's request for resentencing, stating that it would not have imposed a different sentence under an advisory guidelines regime.  The Second Circuit affirmed the denial of resentencing on November 30, 2010.  United States v. Jones, 408 F. App'x 416, 420 (2d Cir. 2010).  Jones's petition for a writ of certiorari was denied on April 4, 2011.  Jones v. United States, 131 S. Ct. 1830 (2011).

*DISCUSSION*

Jones asserts that he is entitled to habeas corpus relief because he was denied his Sixth Amendment right to effective assistance of counsel on appeal.  Specifically, he claims that appellate counsel failed to raise a sufficiency of the evidence claim with regard to the existence of the RICO enterprise as alleged in the fifth superseding indictment.  According to Jones, that claim would have been successful because count one of the indictment alleges a RICO enterprise that existed from 1990 to November 2001 whose "core members," from the time of its inception, included his co-defendants, Aaron Harris ("Harris") and Quinne Powell ("Powell"), yet, at trial, the government introduced no evidence to prove that either, or both, Harris and Powell were involved in any of the enterprise's alleged criminal activity during the years 1990 to 1994.  Thus, in the

absence of such evidence, Jones maintains that the RICO and RICO conspiracy convictions cannot stand. Tbus, he asserts that appellate counsel's failure to raise the claim constituted constitutionally deficient performance and caused him prejudice.

In opposition, the government argues that Jones's motion is time barred because it was filed more than four years after his conviction became final, which, it says, was on the date the Second Circuit affirmed his conviction, October 20, 2008. It further maintains that Jones's sufficiency of the enterprise evidence claim is procedurally barred because he failed to raise it on direct appeal and he has not made the required showing of cause and actual prejudice to excuse that procedural default. In addition, the government asserts that Jones's sufficiency of the enterprise evidence claim was raised on appeal by his co-defendants in their separate appeals and was squarely rejected by the Second Circuit. Thus, the government maintains that, even if Jones's claim had been raised, it would have been similarly rejected and this Court is required to reject it now pursuant to the "mandate rule." Finally, the government contends that Jones's ineffective assistance of counsel claim is without substantive merit and that Jones has not, nor can he, establish deficient legal representation or the required prejudice.

*Timeliness of Motion*

According to the government, Jones's habeas motion is time barred under ADEPA's one-year statute of limitations because it was not filed until April 14, 2012, almost four years after his judgment of conviction became final, which, it maintains, occurred 90 days from October 20, 2008, the date the Second Circuit affirmed his conviction and no petition for certiorari was filed.

The Court disagrees. The government's statute of limitations argument ignores the fact that, on October 20, 2008, the Second Circuit, while affirming Jones's conviction, issued a limited

3

remand under Crosby that required the district court to determine whether Jones should be resentenced pursuant to the advisory guidelines regime that became effective after his sentence was imposed.  In compliance with the mandate, on remand, the district court issued a ruling declining to resentence Jones on August 11, 2009.  Jones appealed the denial to the Second Circuit.  The Second Circuit affirmed Jones's sentence on November 30, 2010, and Jones's petition for certiorari was denied on April 4, 2011.  Thus, contrary to the government's assertion, Jones's conviction did not become final until his petition for certiorari was denied and the one-year statute of limitations did not run until one year later, April 4, 2012.  Clay v. United States, 537 U.S. 522, 527 (2002) (noting that the precise meaning of "final judgment" depends on context and in the context of post-conviction relief, finality attaches when the Supreme Court denies a petition for certiorari or the time for filing a certiorari petition expires).

"A judgment of conviction encompass both a determination of guilt and the imposition of sentence, and until both are settled, the judgment is not final." Duque v. United States, No. 08 Civ 9315(RMB)(MHD), 2009 WL 2370639, at *6 (S.D.N.Y. Jul 31, 2009) (noting, in similar circumstances, that the problem with the government's statute of limitations argument was that the habeas petitioner's judgment cannot be viewed as being final after his conviction was affirmed on appeal because the appellate court "left open the question of the appropriate sentence, choosing to remand rather than affirm on that question" and holding that the judgment was not finalized until the sentence was affirmed on appeal and certiorari was denied) (citations omitted); Morgan v. United States, No. 08 Civ. 927 (TPG), 2010 WL 4921770, at *2 (S.D.N.Y. Dec. 2, 2010) (same); see generally Burrell v. United States, 467 F.3d 160, 162-66 (2d Cir. 2006) (noting, for purposes of determining the finality of a criminal judgment, the difference between a remand for a ministerial

act requiring a routine, nondiscretionary act by the district court that could not be appealed on any valid ground and a remand that gives the district court discretion or authority to entertain new arguments, and holding that, unlike a discretionary remand, a ministerial remand does not delay a judgment's finality because the lower court's action on remand can not give rise to a valid appeal).

Accordingly, Jones's habeas petition, which was dated April 14, 2012, was not, as the government claims, filed almost four years after his judgment became final, but was filed only 10 days after the one-year limitations period expired. Regardless, it was not filed within the one-year time limit, and unless the Court finds that the circumstances causing the short delay are sufficient to warrant equitable tolling of the limitations period for those ten days, Jones's habeas petition must be deemed time barred and denied as such.

In this regard, the Court has given careful consideration to Jones's submissions setting forth his due diligence and the alleged exceptional circumstances that caused his petition to be filed ten days after the one-year limitation period expired. Although those circumstances present a close call as to whether Jones has made the required showing to warrant equitable tolling, it is, in the end, a call that the Court need not make because, even if his petition were timely filed, it does not present a viable claim for habeas relief and thus would be denied on the merits.

Ineffective Assistance of Counsel Claim

For a habeas petitioner to prevail on a claim of constitutionally inadequate counsel,[1] he must overcome the strong presumption that counsel provided effective assistance. Strickland v.

---

[1] Section 2255 is the preferred method for bringing a claim of ineffective assistance and the fact that it was not raised on direct appeal does not bar it from being brought under § 2255. Massaro v. United States, 538 U.S. 500, 509 (2003).

Washington, 466 U.S. 688, 689 (1984).  Strickland requires a habeas petitioner claiming ineffective assistance of counsel to make a two-part showing.  First, he must demonstrate that counsel's performance was deficient—that is, his counsel made errors of such serious magnitude that he was deprived of the counsel guaranteed by the Sixth Amendment.  Id. at 687.  Second, he must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different.  Id. at 694.  The Second Circuit has repeatedly "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised."  Loliscio v. Goord, 263 F.3d 178, 195 (2d Cir. 2001).  "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance, and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' "  United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (quoting Strickland, 466 U.S. at 690).

As noted, Jones contends that his appellate counsel rendered constitutionally inadequate representation because he failed to argue that the government did not present sufficient evidence to prove the existence of the RICO enterprise as alleged in the fifth superseding indictment.  In opposition, the government maintains that the evidence showing the existence of the alleged enterprise was overwhelming - - indeed, that the Second Circuit found as much in its ruling on that issue in the appeal of one of Jones's co-defendants.[2]  See United States v. Jones, 482 F.3d 60, 70

---

[2]The government also reads Jones's argument as raising a sufficiency of the evidence claim as substantive grounds for habeas relief and not just as a ground for ineffective assistance of counsel, and, as such contends that the claim is procedurally barred for failure to raise it on direct appeal and also that it must be denied under the "mandate rule" because the Second Circuit considered and squarely rejected it in an earlier collateral proceeding.  See Burrell v. United States, 467 F.3d 160 (2d Cir. 2006) (noting that the mandate rule bars relitigation of issues already decided, directly or implicitly, on direct appeal in the same case) .  The Court, however,

(2d Cir. 2006) (finding, on evidence similar to that presented at Jones's trial, the existence of "a relatively structured enterprise, conducted over a substantial period of time."). The government also argues that Jones has not shown that counsel's performance was deficient for failing to raise that sufficiency challenge or that he suffered prejudice.

The fundamental flaw in Jones's ineffective assistance/sufficiency of the evidence argument lies in his mis-characterization of the indictment's allegations setting forth the RICO enterprise. According to Jones, the indictment alleged a RICO enterprise that commenced in 1990 and ended in November 2001, and that, among others, co-defendants Powell and Harris were its "core members" from its inception, and who, in 1995, established, and helped Jones and others establish, a drug organization that distributed heroin and cocaine base in the Middle Court of the P.T. Barnum Housing Project in Bridgeport, Connecticut. Jones further asserts that, despite these enterprise allegations, the government presented no evidence at his trial[3] showing that Powell and Harris were involved in any of the enterprise's alleged criminal activity during the years 1990 to 1994,[4] and that without such evidence, the alleged enterprise was not sufficiently proven.

Contrary, however, to Jones's characterization, there is nothing in the indictment's allegations defining the RICO enterprise that identifies the "core members" or the dates in which each alleged member was an active participant. Rather, the indictment alleges an enterprise that

---

does not read Jones's motion as raising such a substantive claim. It is raised only in the context of ineffective assistance and as such is not procedurally barred.

[3]To avoid potential spillover prejudice from evidence of violent acts alleged against some defendants, but not all, Jones's co defendants, Powell, Harris and Luke Jones were tried separately from Jones.

"*at various times material . . .*" was comprised of defendants Powell, Harris, Jones, Luke Jones, and Leonard Jones, among other defendants and others known and unknown, but not named as defendants, who "*were officers, members, and associates* of an organization known as 'Q&A,' 'The Batman Crew,' or 'The Middle,' and 'D-Top' (*hereinafter referred to as "the Enterprise"*), which engaged in narcotics trafficking and acts of violence." The indictment further alleges that "*[t]his criminal organization, including its leadership, its membership, and its associates constituted an Enterprise* as defined in Title 18, United States Code, Section 1961(4), *to wit: a group of individuals associated in fact,* although not a legal entity . . . [which] *at all times relevant . . . operated in . . . the P.T. Barnum Housing Project in Bridgeport, Connecticut, among other locations, [and] constitutes an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.*" (Fifth Super. Indict. Para. 1-2) (emphasis added).

Again, contrary to Jones's claim, the enterprise alleged in the indictment was amply supported by trial evidence showing, not only that it existed as charged, but that it had an "ascertainable structure beyond that inherent in the pattern of activity in which it engag[ed]," Boyle v. United States, 556 U.S. 938 (2009), and from which it could be inferred that persons associated with it engaged in a pattern of racketeering activity. Id. at 947 (noting that the evidence used to prove the pattern of racketeering activity and the evidence establishing the enterprise may coalesce). At Jones's trial, the government's evidence consisted of, *inter alia*, testimony of cooperating witnesses, including street-level sellers and mid-level lieutenants, as well as law enforcement officers, who described a relatively structured, ongoing enterprise whose overall drug-distribution operation was run by Luke Jones and his two nephews, Jones and Lonnie Jones, with

the assistance of Harris and Kenneth Richardson ("Richardson"), and numerous lieutenants who worked under them supervising the street-level drug dealers and supplying those dealers with heroin and crack cocaine in two specific areas inside the P.T. Barnum Housing Project, specifically the Middle Court and D-Top areas. In the Middle Court area, Jones and Lonnie Jones had several lieutenants working under them, including Willie Nunley, David Nunley, Kevin Jackson, Eugene Rhodes ("Rhodes") and John Foster ("Foster"). Rhodes and Foster were cooperating witnesses who testified at Jones's trial and provided details of the inner workings of the Middle Court crew. They described how drugs were sold in the Middle Court every hour of every day, in multiple shifts, each of which was overseen by various lieutenants. The lieutenants would obtain bricks of heroin and slabs of crack cocaine in prepackaged individual plastic bags from Jones, Lonnie Jones and, occasionally, Richardson. The lieutenants would distribute the individual bags to the street sellers who engaged in hand-to-hand sales with the customers. Street sellers included Glenda Jimenez, James Earl Jones and Lawson Day, all of whom were cooperating witnesses who testified about their involvement in the enterprise's day-to-day activities in the Middle Court. The lieutenants also made sure that the street operations ran smoothly, that the sellers had steady and sufficient supplies of narcotics to sell, collected money from the street-sellers and served as look outs. If a street seller was arrested, Jones and Lonnie Jones would post bond for his release. In order to preserve their control and dominance over their Middle Court turf and to keep out rival drug gangs, the Middle Court crew only allowed their specific "brands" of crack and heroin to be sold on their "turf" and frequently engaged in violence and threatened violence. To further the enterprise's goal of selling narcotics in P.T. Barnum, its members engaged in numerous related racketeering acts, including narcotics conspiracies and acts of violence.

This evidence, viewed in the light most favorable to the government and giving credit to every inference the jury might have drawn in the government's favor, United States v. Dhinsa, 243 F.3d 635, 648 (2d. Cir. 2001) (stating the standard by which a challenge to the sufficiency of the evidence is judged), certainly demonstrated a well-defined, structured enterprise with an enduring power structure or core leadership, whose associates and members worked together over a lengthy period of time for the common purpose of engaging in a pattern of racketeering activity, including narcotics distribution and narcotics conspiracy, in two exclusive areas inside the P.T. Barnum Housing Project.  See Boyle, 556 U.S. at 946 (stating that an association-in-fact enterprise must have at least 3 structural features: a purpose, a relationship among those associated with it and longevity sufficient to permit it to pursue the enterprise's goals).  Moreover, even if, as Jones alleges, there was no evidence showing that Powell and Harris had any involvement in the criminal activities of the enterprise from 1990 to 1994, the law is clear that the government does not need to prove an enterprise was comprised of a fixed membership throughout its existence.  E.g., United States v. Eppolito, 543 F.3d 25, 49 (2d Cir. 2008).  There is nothing in RICO that "exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." Boyle, 566 U.S. at 948.  Indeed, different members of an enterprise may perform different roles at different times, and it may continue to exist even if it undergoes changes in membership.  United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991).  All that the government is required to prove to satisfy the enterprise element of RICO is evidence showing that it functioned as an ongoing, continuing unit, whose core leadership remained the same, even if its membership changed during the period alleged.  Id.  The fact that, as Jones asserts, the government introduced evidence at Luke Jones's separate trial showing that Luke Jones, Powell, Harris and others

converted cocaine into cocaine base for distribution in the Middle Court and D-Top areas and distributed drugs between buildings six and seven in P.T. Barnum in 1995, but did not introduce such evidence at his trial. does not take away from the fact that there was ample, indeed overwhelming, other evidence proving the existence of the RICO enterprise led by Jones, Luke Jones, Lonnie Jones and others as charged in the fifth superseding indictment.

Thus, Jones's appellate counsel's strategic decision to not raise a meritless sufficiency of the evidence argument as to the existence of the charged enterprise hardly rises to the level of ineffective assistance or professional incompetence. Kirsh, 54 F.3d at 1071. Accordingly, Jones can not show that his appellate counsel's representation fell below an objective standard of reasonableness, Strickland, 466 U.S. at 688, 693, and his Sixth Amendment ineffective assistance of counsel claim would fail as a matter of law even if his habeas petition had been timely filed.

## CONCLUSION

For the foregoing reasons, Jones's motion for habeas corpus relief pursuant to 28 U.S.C. § 2255 [doc. # 1] is DENIED.

A certificate of appealability will not issue as Jones has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

SO ORDERED

/s/_____
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated this 5th day of December, 2014 at New Haven, Connecticut.